UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| REXING QUALITY EGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-00031-JMS-MPB |
| | ) | |
| REMBRANDT ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Apparently egged on by its lack of success in *Rexing Quality Eggs v. Rembrandt Enterprises, Inc.* (*Rexing I*), 360 F. Supp. 3d 817 (S.D. Ind. 2018), also pending before the undersigned under cause number 3:17-cv-00141-JMS-MPB, Plaintiff Rexing Quality Eggs ("Rexing") has brought this follow-on suit against Rembrandt Enterprises, Inc. ("Rembrandt"). In this suit, to which the Court will refer as *Rexing II*, Rexing brings what it characterizes as distinct and separate claims for conversion and deception after Rembrandt allegedly failed to return certain egg packing materials, collectively called EggsCargoSystem. The problem, according to Rembrandt, is that these claims should have been brought, if at all, in *Rexing I*. Rexing scrambled that opportunity, and the prohibition on claim splitting means that Rexing cannot put the yolk back in the shell via this separate lawsuit. Therefore, for the reasons described below, the Court **GRANTS** Rembrandt's Motion to Dismiss. [Filing No. 20.][1]

## I.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. Ordinarily, defenses such as res judicata (of which claim preclusion

---

[1] Citations to the docket are to *Rexing II* unless otherwise indicated.

and claim splitting are "component[s]," *see Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008)) need not be anticipated in a complaint and cannot be resolved until after the close of pleadings. *See, e.g.*, *Parungao v. Cmty. Health Sys., Inc.* 858 F.3d 452, 457 (7th Cir. 2017); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). But where, as here, everyone agrees that the Court has all the information "needed in order to be able to rule on the defense," it may do so without unnecessarily prolonging matters by waiting until after the defendant has filed an answer. *Carr*, 591 F.3d at 913.

Evaluating the sufficiency of a complaint under Rule 12(b)(6) requires the Court to accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). In addition to such factual allegations, the Court may also consult facts that are properly the subject of judicial notice under Federal Rule of Evidence 201. *Parungao*, 858 F.3d at 457. In general, this includes "court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Id.* *See generally In re Lisse*, 905 F.3d 495 (7th Cir. 2018) (Easterbrook, J., in chambers) (describing the proper procedure for and subjects of judicial notice). "When it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate." *Parungao*, 858 F.3d at 457 (internal quotation omitted).

## II.
### BACKGROUND

The background of Rexing and Rembrandt's commercial relationship (predominantly as egg buyers and sellers, respectively) is detailed at length in *Rexing I*, 360 F. Supp. 3d at 822-32. In short, Rexing and Rembrandt reached a deal for Rembrandt to supply Rexing with 12 loads of cage free eggs per week for at least one year. *See id.*; [Filing No. 1-3 at 6-7; Filing No. 22-1 at 8-

14 (purchase agreement)]. That relationship soured approximately eight months into the deal, when Rexing repudiated the agreement and refused to accept any further loads of eggs. [Filing No. 1-3 at 6-7]; *Rexing I*, 360 F. Supp. 3d at 828-30. In this case, Rexing seeks damages for Rembrandt's alleged failure to return the plastic flats, dividers, and pallets that Rembrandt used (and Rexing purchased) to load eggs for Rexing to pick up. [Filing No. 1-3 at 6.] These materials are known as "EggsCargoSystem." [Filing No. 1-3 at 6.]

EggsCargoSystem played a role in *Rexing I*. For starters, the purchase agreement between Rexing and Rembrandt required Rembrandt to "supply all required materials (i.e., without limitation, all pallets, flats, boards) necessary to packing and shipping the Shell Eggs for Purchaser hereunder." [Filing No. 22-1 at 10.] In its *Rexing I* Complaint, filed in state court on August 16, 2017, Rexing alleged that its continued performance was excused by force majeure and that Rembrandt breached the express warranties in the Purchase Agreement. [Filing No. 22-1 at 4-5 (*Rexing I* Complaint).] Rexing sought damages, including consequential and incidental damages, suffered as a result of Rembrandt's breach. [Filing No. 22-1 at 5-6.] In its summary judgment response brief, Rexing argued that the purchase agreement's remedies clause was unenforceable in part because it failed to compensate Rexing for its "substantial upfront costs in preparation for its obligations under the Purchase Agreement."[2] [*Rexing I*, Filing No. 90 at 34.] In support, Rexing

---

[2] Unlike in *In re Lisse*, which rejected a request to take judicial notice of a motion filed in another case because it was "not evidence of an adjudicative fact," 905 F.3d at 497, here it is evidence of the claims Rexing asserted in *Rexing I*, which are adjudicative facts in the context of Rembrandt's Motion to Dismiss. In other words, while *In re Lisse* rejected the tendered brief because it was not offered "just to show that it had been filed," *id.*, here that is precisely the reason Rembrandt requests that the Court take judicial notice of Rexing's filings from *Rexing I*. This flows directly from the text of Rule 201(b) because the claims and arguments set forth in *Rexing I* are "not subject to reasonable dispute" and may be "accurately and readily determined" from the filings in that case. Fed. R. Evid. 201(b); *see also NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984-85 (E.D. Cal. 2012) ("While the court cannot accept the veracity of the representations made in the documents [filed in a related state-court proceeding], it may properly take judicial notice of

3

cited to the declaration of Dylan Rexing, [*Rexing I*, Filing No. 89-10 at 1-8], which, in turn, cited what the declaration described as accurate evidence of its expenses. One such spreadsheet appended to the declaration listed "EggsCargoSystem" under a "Material Investment" heading. [*Rexing I*, Filing No. 89-10 at 10.] Another spreadsheet, offered by Rexing to support its claim of commercial impracticability, [*Rexing I*, Filing No. 90 at 19], included EggsCargoSystem as a "Start-up Cost[]," along with a "Diamond Loader/Preloader" and other expenses, [*Rexing I*, Filing No. 72-6 at 1]. Finally, in response to an interrogatory asking Rexing to "[s]tate the factual basis for [y]our claim . . . that Rembrandt is liable to [y]ou for 'start-up costs incurred' in the amount of $997,650," Rexing responded that it "incurred preparation expenses in reliance of the terms of Supply Agreement, which, most importantly, were necessary for Rexing Eggs to incur in order to meet its obligations under the Supply Agreement . . . . Specifically, Rexing Eggs made the following purchases: . . . 2) the 'EggsCargoSystem' . . . ." [Filing No. 30-2 at 20.]

*Rexing I* remains ongoing. On December 21, 2018, the Court entered summary judgment for Rembrandt on Rexing's claims for excusal and breach of express warranties, as well as partial summary judgment on Rembrandt's breach of contract counterclaim. 360 F. Supp. 3d 817. No partial final judgment has issued, and trial remains set for October 2019. [*See Rexing I*, Filing No. 123.]

*Rexing II* was filed on January 29, 2019, just a month after the Court's summary judgment entry in *Rexing I* and just days before the *Rexing I* parties convened for what proved to be an unfruitful settlement conference. [*Rexing I*, Filing No. 121.] In relevant part, Rexing alleges that it purchased the EggsCargoSystem to facilitate its contractual relationship with Rembrandt.

---

the existence of those documents and of the representations having been made therein." (internal quotation omitted)).

4

[Filing No. 1-3 at 6-7.] Rembrandt would load the eggs onto the EggsCargoSystem, and Rexing then retrieved the eggs. [Filing No. 1-3 at 7.] According to Rexing, Rembrandt retained possession of "thousands of" the EggsCargoSystem materials, even after the relationship ended. [Filing No. 1-3 at 7.] The timeline of the end of the relationship, as articulated in the *Rexing I* and *Rexing II* pleadings, is as follows:

- No later than June 5, 2017, Rexing told Rembrandt it would no longer take egg loads. [Filing No. 22-1 at 4; Filing No. 1-1 at 3]; *Rexing I*, 360 F. Supp. 3d at 830.

- Rexing made unqualified demands for return of the EggsCargoSystem on June 8 and June 12, 2017. [Filing No. 1-3 at 7.]

- On June 16, 2017, Rexing filed its *Rexing I* Complaint in state court, setting forth the claims described above. [Filing No. 22-1 at 3-7.]

- On August 17, 2017, Rexing made another unqualified demand for return of the EggsCargoSystem. [Filing No. 1-3 at 7.]

- The *Rexing I* pleading amendment deadline expired on March 11, 2018. [*Rexing I*, Filing No. 22 at 4.]

- In November and December 2018, Rembrandt returned some, but not all, of the EggsCargoSystem materials. [Filing No. 1-3 at 7.] Rexing seeks compensation for Rembrandt's failure to timely return these materials. [Filing No. 1-3 at 8-9.]

On February 14, 2019, Rembrandt removed *Rexing II* from state court. [Filing No. 1.] On March 25, 2019, Rembrandt filed its Motion to Dismiss. [Filing No. 20.] Rembrandt's Motion is fully briefed and ripe for consideration.

# III.
## DISCUSSION

Rembrandt argues that the *Rexing II* claims fail because the Court's summary judgment order in *Rexing I* raises the res judicata bar and because Rexing improperly split its claims between two cases. The Court addresses each in turn.

### A. Res Judicata

Before turning to the merits of Rembrandt's res judicata arguments, the Court must first address a choice of law issue. In *Rexing I*, the Court applied Iowa law, which both parties agreed was mandated by the choice of law provision in the purchase agreement. 360 F. Supp. 3d at 832. Here, despite the fact that the issue of who was to pay for shipping materials was covered in the purchase agreement (and notwithstanding Rexing's characterization of its claims as torts), [*see* Filing No. 22-1 at 10], the parties agree that Indiana law applies. In support of this proposition, both parties cite to cases stating the general rule that, in diversity cases, a federal court applies the law of preclusion of the state in which the court is located. [*See* Filing No. 21 at 5 (citing *Harmon v. Gordon*, 712 F.3d 1044, 1054 (7th Cir. 2013)); Filing No. 24 at 3 (citing *Infra-Metals Co. v. 3600 Mich. Co., Ltd.*, 2009 WL 5322948, at *3 (N.D. Ind. 2009)).] That, however, is an incomplete statement of the law. Rather, as the Supreme Court has explained, federal courts sitting in diversity apply the law of preclusion "that **would be applied** by state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (emphasis added). Frequently, as in *Harmon* and *Infra-Metals*, the law that would be applied in the state court will be the law of that state—but not always. To make that determination, one would ordinarily have to turn to the choice of law principles of the state in which the federal court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Perhaps an Indiana court, faced with the allegations in *Rexing II* and the purchase agreement that governs the parties'

relationship, would hold that Iowa law applies. But the Court need not undertake such an inquiry because the parties themselves have not done so, and "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). The parties both apply Indiana law, so the Court follows suit and applies Indiana law as well.

Rembrandt first argues that dismissal is appropriate under Indiana's doctrine of res judicata, citing this Court's summary judgment order in *Rexing I*. [Filing No. 30 at 5-8.] In response, Rexing argues that res judicata does not apply because the summary judgment order was not a final judgment on the merits, because *Rexing I* did not determine the issues raised in *Rexing II*, and because the claims raised in each case were not part of the same transaction or occurrence. [Filing No. 24 at 5-12.] In reply, Rembrandt argues that the Court's summary judgment order was a final order for purposes of summary judgment under Indiana law and that the requirements for res judicata are otherwise satisfied in this case. [Filing No. 30 at 4-6.]

Indiana's law on claim preclusion—the branch of res judicata invoked by Rembrandt—requires the proponent to establish four elements:

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005).

The Court's analysis of claim preclusion begins and ends with the requirement, articulated in both the first and second elements, that there be a judgment in the first case. As the Seventh Circuit has explained, "In order for issue preclusion to apply under Indiana law, the rendering court's decision must be final. . . . [T]he Indiana courts use a holistic analysis of finality; they

focus on the nature of the judgment itself and specifically whether it is sufficiently firm and non-tentative." *Mains v. Citibank, N.A.*, 852 F.3d 669, 676 (7th Cir. 2017).

Notwithstanding the fact that state law provides the substantive rule of decision for resolving Rembrandt's invocation of claim preclusion, the Federal Rules of Civil Procedure continue to govern procedural matters in this case. And Rule 54 states, in no uncertain terms, that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Judgment has not yet been entered in *Rexing I*, meaning that the Court's summary judgment order "may be revised at any time." *Id.* That is the opposite of "firm and non-tentative," *Mains*, 852 F.3d at 676, which means that the order may not serve as the final judgment required to invoke claim preclusion.

The primary Indiana case relied upon by Rembrandt supports this conclusion. In *Richards v. Franklin Bank & Trust Co.*, 381 N.E.2d 115 (Ind. Ct. App. 1978), the Indiana Court of Appeals confronted a situation where the trial court had entered judgment in a previous suit. The plaintiff argued that the judgment from the first suit was not final because the trial court had not "state[d] with particularity the reasons for any summary judgment." *Id.* at 688. But this technical shortcoming had no impact on the issue of finality because the trial court in fact entered judgment; the time to challenge the propriety of the summary judgment order was at the time of the judgment in the first suit, not by way of a second, separate lawsuit. The court explained that a judgment is final if the trial court "did intend to dispose of the subject matter of the litigation as to the parties as far as the court had the power to dispose of it and that there was reserved no further question for future determination," which the judgment in the first suit obviously did. *Id.* at 689.

Here, by not entering partial final judgment (something that the Court had not been asked to do), the Court confirmed that it did **not** "intend to dispose of the subject matter of the litigation." *Id.* By operation of Rule 54(b), the *Rexing I* summary judgment order did not "dispose" of anything on its own accord, and no final judgment was entered to effect such a disposal. Rather, the *Rexing I* summary judgment order was a nonfinal, interlocutory order lacking the finality required to trigger res judicata. Res judicata therefore does not bar Rexing's claims in this case.

### B. Claim Splitting

As an alternative to its res judicata argument, Rembrandt argues that Rexing's claims fail pursuant to the prohibition on claim splitting. [Filing No. 21 at 8-10.] In response, Rexing argues that its *Rexing II* claims are not impermissibly split from *Rexing I* because the claims involve different proofs and different elements and are the result of subsequent acts. [Filing No. 24 at 14-15; *see also* Filing No. 24 at 8-10.] In reply, Rembrandt argues that the two cases are intertwined, citing the cases' shared roots in the purchase agreement and the similarity of damages demanded in each case. [Filing No. 30 at 6-13.]

Judge Young recently surveyed the case law and set forth the purpose and strictures of the doctrine prohibiting claim splitting:

> The doctrine of claim-splitting precludes a plaintiff from alleging claims that arise from the same transaction or events that underlie claims brought in a previous lawsuit. In this sense, the rule against claim splitting is based on the same principles as *res judicata* and bars not only those issues that were actually decided in a prior lawsuit, but also all issues which could have been raised in that action. *Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015); *see also Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) ("This case is a quintessential example of claim splitting in duplicative lawsuits, a litigation tactic that [the] res judicata doctrine is meant to prevent."); *Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997) ("Two claims arising from the same facts are one claim for res judicata purposes, and may not be split . . . by making each claim the subject of a separate suit . . . ."). Unlike traditional claim preclusion, however, the bar against claim splitting can be applied before either action reaches a final judgment on the merits.

9

> The doctrines of claim splitting and res judicata promote judicial economy and shield parties from duplicative litigation. *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). "But claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." *Id.* (citing Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4406).
>
> As alluded to above, "the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.* Claim splitting therefore applies if: (1) the second claim is based on the same transaction or occurrence as the first claim and there is (2) an identity of parties or their privies. *See, e.g., Palka*, 662 F.3d at 437; *see also Kim*, 412 F. Supp. 2d at 941 ("[A] party must bring in one action all legal theories arising out of the same transaction or series of transactions."). In determining whether the parties share privity, the court looks to whether the parties share an identity of interest in the subject matter of the litigation. *Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 559 (7th Cir. 2014).

*Telamon Corp. v. Charter Oak Fire Ins. Co.*, 2016 WL 67297, at *2 (S.D. Ind. 2016), *aff'd*, 850 F.3d 866 (7th Cir. 2017) (certain citations omitted).

On appeal, the Seventh Circuit affirmed Judge Young's decision and observed that Indiana had adopted these principles: "Indiana bars parties from 'split[ting] a cause of action, pursuing it in a piecemeal fashion and subjecting a defendant to needless multiple suits.' Instead, '[m]ultiple legal theories supporting relief on account of one transaction must be litigated at one go.'" *Telamon*, 850 F.3d at 873 (first quoting *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1048 (Ind. Ct. App. 2011), then quoting *Erie Ins. Co. v. George*, 681 N.E.2d 183, 190 (Ind. 1997)); *Erie Ins. Co. v. George*, 681 N.E.2d 183, 190 (Ind. 1997) ("One obvious objective behind the rule [against claim splitting] is deterring repetitive litigation. Public resources are wasted if more than one judge and more than one jury are employed to try claims for different damage elements arising out of the same event . . . . The defendant also has an interest in not being subject to multiple litigation.").

The lone dispute between the parties is whether the claims and facts in *Rexing I* and *Rexing II* are sufficiently similar to trigger the prohibition on claim splitting. Reviewing the pleadings, the purchase agreement, and the arguments and evidence advanced in the cases compels the

conclusion that the two cases "center[] around the disposition of the same" controversy. *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1048 (Ind. 2011). *Rexing I* sought incidental and consequential damages for Rembrandt's alleged breach of warranties in the purchase agreement—a document that also specified who was to purchase the EggsCargoSystem. Then, when asked in discovery as to the damages Rexing was seeking, Rexing specifically included EggsCargoSystem among its start-up expenses for which it believed Rembrandt to be liable. Whether dressed up as a category of damages (as in *Rexing I*) or an independent tort claim (as in *Rexing II*), it is clear that *Rexing II* seeks to recover the same damages for the EggsCargoSystem it sought in *Rexing I*

Rexing's argument that its *Rexing II* claims accrued after it filed *Rexing I* is belied by its allegations in this case. Rexing refused to take egg loads no later than June 5, 2017. Over the next week, Rexing twice unsuccessfully demanded that Rembrandt return the EggsCargoSystem. On June 16, 2017, Rexing filed its *Rexing I* Complaint alleging that its performance under the purchase agreement was excused and that Rembrandt breached the express warranties of the purchase agreement. Rexing made another demand for the EggsCargoSystem the next day. Rexing thus was well aware of its ability to allege an independent claim for return of or damages for the EggsCargoSystem before it filed *Rexing I*—and this is true regardless of Rembrandt's subsequent return of some of the materials. In other words, Rexing wholly fails to explain how the partial return of the EggsCargoSystem had any impact on the availability of its *Rexing II* claims at the time it filed *Rexing I*.

*Rexing I* and *Rexing II* are derived from the same business dispute involving the same claim to damages for the EggsCargoSystem, which Rexing purchased to fulfill its obligations under the purchase agreement. Rexing's legal theories may differ, but because Rexing had the same claims available to it at the time it filed *Rexing I*—and certainly well before the pleading amendment

11

deadline—it was obligated to raise **all** claims it had to the packing materials in that case. Rexing did not do so, and it cannot split its claims to raise them in a new case. Rembrandt is therefore entitled to judgment in its favor.

## IV.
### CONCLUSION

Rexing failed to put all of its eggs in one basket when it filed *Rexing I*. It is not entitled to use this case as a second basket. Therefore, the Court **GRANTS** Rembrandt's Motion to Dismiss. [20] Final judgment will issue accordingly.

Date: 5/29/2019

*[Signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**